**Billy Eugene McKEE, Plaintiff,**

v.

**AMERICAN TRANSFER AND STORAGE and AAA American Moving & Storage Co., Defendants.**

**Civil Action No. 1:96–CV–131–C.**

United States District Court, N.D. Texas, Abilene Division.

Dec. 2, 1996.

Linda Sue Purcell, Law Office of Linda Purcell, Abilene, TX, for plaintiff.

Steven C. Malin, Law Office of Steven C. Malin, McKinney, TX, for defendants.

## *ORDER*

CUMMINGS, District Judge.

On this day the Court considered Defendant AAA American Moving & Storage Co.'s

(AAA) Motion to Dismiss Plaintiff's Original Complaint, and Brief in Support Thereof filed July 5, 1996. No response was filed. After considering all relevant arguments and evidence of counsel, the Court is of the opinion that AAA's Motion should be GRANTED IN PART and DENIED IN PART. The Court GRANTS AAA's Motion as it relates to Plaintiff's state claim WITH LEAVE TO AMEND the defect described below, but DENIES its Motion as it relates to Plaintiff's federal claim.

AAA brings this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Therefore, this Court must accept all facts alleged by Plaintiff as true and view them in the light most favorable to Plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).

*Alleged Facts*

American Transfer and Storage (American Transfer) employed Plaintiff Billy McKee as a furniture loader. During the course and scope of his employment, Plaintiff injured his back and subsequently sought medical attention. Because of his injury, Plaintiff filed a Worker's Compensation claim. After Plaintiff returned to work, American Transfer failed to make reasonable accommodations in the workplace which would eliminate the need for Plaintiff to lift heavy objects. Plaintiff alleges this violated the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.* Plaintiff also brings a state claim for wrongful termination. Plaintiff alleges that because he filed a Worker's Compensation claim, American Transfer terminated his employment. Plaintiff seeks to hold AAA liable because it is the successor to American Transfer.

Plaintiff sued AAA because it acquired the right, title and interest of American Transfer. As a result of this acquisition, Plaintiff asserts that AAA is derivatively liable for American Transfer's actions.

Defendant attacks Plaintiff's Complaint arguing that because Texas does not generally recognize successor liability[1] for subsequent

---

1. Defendant's 12(b)(6) motion uses successor and derivative liability interchangeably. This Court

sees no difference in the words; however, because the Fifth Circuit has elected to use the

---

purchases of corporate assets, Plaintiff's Complaint fails to state a claim upon which relief can be granted. Although Defendant's Motion fails to differentiate the state claim from the federal claim, this distinction is important to the resolution of this motion. The issue of ADA successor liability is *res nova* in this Circuit.

### 12(b)(6)—State Claim

 Texas law does not generally recognize successor liability for subsequent purchases of corporate assets. *See Mudgett v. Paxson Machine Co.*, 709 S.W.2d 755, 756–59 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). The Texas Business & Corporations Act eliminates the doctrine of implied successor liability.[2] However, when the successor corporation expressly assumes the liability of the predecessor corporation, the successor corporation will be liable for the predecessor corporation's liabilities. Tex.Bus.Corp. Act Ann. art. 5.10B(1) and (2) (Vernon 1996); *Glasscock v. Armstrong Cork Co.*, 946 F.2d 1085, 1094–95 (5th Cir.1991). There is no allegation in Plaintiff's complaint that Defendant expressly assumed any liabilities of American Transfer. Plaintiff's complaint fails to state a claim upon which relief can be granted.

### 12(b)(6)—Federal Claim

 Plaintiff asserts that American Transfer violated the ADA and, therefore, sued AAA under a successor liability theory.

This Court has been unable to find any cases that have addressed whether a successor corporation may be liable for its predecessor corporation's violations of the ADA.[3] Several courts, however, have addressed Title VII successor liability. *See Rojas v. TK Communications, Inc.*, 87 F.3d 745 (5th Cir. 1996); *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir.1974); *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228 (7th Cir.1986); *Long v. AT & T Information Systems, Inc.*, 733 F.Supp. 188 (S.D.N.Y. 1990).

The administrative procedures and the remedies under Title VII are the same as those available under the ADA. 42 U.S.C. § 12117; *Buchanan v. City of San Antonio*, 85 F.3d 196, 200 (5th Cir.1996) ("The remedies provided under the ADA are the same as those provided by Title VII, 42 U.S.C. §§ 2000e–4 to 2000e–6, 2000e–8, 2000e–9.") (footnote omitted). 42 U.S.C. § 2000e; *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir.1996) ("[T]he ADA incorporates by reference the procedures applicable under Title VII."). Consequently, this Court looks to those courts which have interpreted Title VII, 42 U.S.C. 2000e *et seq.* successor liability as guidance for successor liability of ADA claims.

 In *Rojas*, the Fifth Circuit followed the Sixth and Seventh Circuits by holding that successor liability is available under Title VII. *Rojas*, 87 F.3d at 750. The court identified nine factors to be considered in determining whether successor liability should be imposed.[4] Of the nine factors, two are critical: (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or

---

phrase successor liability, we will do so as well. *See Rojas v. TK Communications, Inc.*, 87 F.3d 745 (5th Cir.1996).

**2.** Article 5.10B states:

A disposition of any, all, or substantially all, of the property and assets of a corporation, whether or not it requires the special authorization of the shareholders of the corporation, effected under Section A of this article or under Article 5.09 of this Act or otherwise:

(1) is not considered to be a merger pursuant to this Act or otherwise; and

(2) except as otherwise expressly provided by another statute, does not make the acquiring corporation ... responsible or liable for any liability or obligation of the selling corporation that the acquiring corporation ... did not expressly assume.

Tex.Bus.Corp. Act Ann. art. 5.10B (Vernon 1996).

**3.** The Eleventh Circuit was presented with facts similar to ours in *Gonzales v. Garner Food Services, Inc.*, 89 F.3d 1523 (11th Cir.1996). However, because the plaintiff was not a "qualified individual with a disability" pursuant to 42 U.S.C. § 12111(8), the district court granted the defendant's 12(b)(6) motion. *Gonzales v. Garner Food Services, Inc.*, 855 F.Supp. 371 (N.D.Ga. 1994). Consequently, the Eleventh Circuit Court of Appeals was concerned with whether the plaintiff was a qualified individual, not with whether there was successor liability.

**4.** The nine factors are:

"(1) whether the successor company had notice of the charge or pending lawsuit prior to

assets of the predecessor; and (2) the ability of the predecessor to provide relief. *Id.*

 The policy behind the successor liability doctrine is to protect the employee when the ownership of the employer suddenly changes. *Id.* Because Defendant made this Motion before the Fifth Circuit decided *Rojas,* these factors were not addressed by Defendant. For the purposes of this motion, this Court must assume that those factors weigh in Plaintiff's favor.

For the reasons stated above, this Court GRANTS Defendant's Motion to Dismiss as it relates to Plaintiff's state law claim, WITH LEAVE TO AMEND the defect described above. Therefore, Plaintiff shall file his amended complaint to state a wrongful termination claim by December 16, 1996; otherwise Plaintiff's wrongful termination claim will be dismissed with prejudice. The Court DENIES Defendant's Motion to Dismiss as it relates to Plaintiff's federal claim.

SO ORDERED.

acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product." *Rojas,* 87 F.3d at 750 (citations omitted).